MARGARET E. AMORY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 42847, 44676. Promulgated April 30, 1931.

*Roy C. Gasser, Esq.,* and *E. L. Ferris, Esq.,* for the petitioner.
*C. H. Curl, Esq.,* for the respondent.

OPINION.

VAN FOSSAN: Respondent determined deficiencies in income taxes for the years 1925, 1926, and 1927 in the respective amounts of $5,474.94, $545.36, and $22,561.33. The basis of the deficiencies is found in respondent's determination that the racing stable operated by petitioner was not a business enterprise operated for a profit. This is the first question for our decision. If it be decided in petitioner's favor, the further question is the amount of petitioner's operating loss in each year.

The evidence discloses that prior to 1924 petitioner owned no horses and had been only casually interested in horse racing. In August of that year, while at the Saratoga races, she conceived the idea of establishing a racing stable. She consulted various persons familiar with racing and inquired if a racing stable could be made a profitable venture. Being advised that it could, petitioner decided to buy a number of yearlings as a nucleus and gradually built a racing stable. She employed a manager and a trainer and proceeded to establish the stable. Her initial investment, made in August, 1924, amounted to $17,900 and by the end of 1925 her investment amounted to $82,400. During 1925 the total receipts of the stable were $24,900, consisting principally of purses won. The expenses of operation proved at the hearing were $49,286.67. In 1926 the string of horses was enlarged further and the receipts were $81,579.92 while expenses were proved in the amount of $110,296.84. The total investment at the end of 1926 was $118,575. In the year 1927 further purchases increased the capital invested to the sum of $189,375. During this year the receipts were $43,446.11 and the proved operating expenses $129,898.71.

Petitioner's stable was maintained in rented quarters located in Maryland. It was known as the Sagamore Stable. The stable was primarily a racing stable and its receipts were primarily due to purses won. Minor amounts were attributable to boarding horses for others and to profits on sales of horses.

Coming to the fundamental question, it is well settled that the operation of a racing stable or a breeding stable, though financially a hazardous undertaking, may be classified as a business under the revenue law. *George D. Widener*, 8 B. T. A. 651; affd., 33 Fed. (2d) 833, and this is true though the business may have sustained substantial losses for several years. Each case, therefore, must be tested by its own facts to determine whether it falls within the category of a business as contemplated by the statute.

Petitioner testified categorically that she entered the racing field solely with an eye to making profit, that she would not have done so except she believed it could be made profitable. She sought ad-

vice on this phase of the matter and was advised that a racing stable could be operated profitably. Petitioner testified that though possessing an independent income and not being, therefore, dependent on the success of the racing stable for a livelihood, she could not afford to suffer losses indefinitely. She negatived with vigor any suggestion that the racing stable was undertaken in whole or in part as a hobby.

In the conduct of the stable petitioner gave such personal attention to the same as is usually given to business enterprises. She required her manager and trainer to keep accurate accounts of operations and expenses, and was personally consulted by them in all phases of the same. The attention and attitude of petitioner toward the racing stable was marked by every indicia of a business interest.

On the evidence in the case there can be but one conclusion—petitioner founded the racing stable as a business enterprise, operated it as such, and is entitled to such benefits by way of deductions as the revenue acts afford to other businesses.

Passing to the second question, i. e., the proven amount of the losses sustained, it need only be said that the evidence amply establishes that in the years in question appropriate business expenses were incurred in the amounts set out above. For the year 1926 we have added to petitioner's income the sum of $7,350, representing an amount by which petitioner's income was admittedly understated in her return.

*Decision will be entered under Rule 50.*